## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

```
_____
                                 )
MELISSA COOPER,                  )
                                 )
            Plaintiff,           )
                                 )
        v.                       ) Civil Action No. 14-1526(EGS)
                                 )
KAYA HENDERSON,                  )
Chancellor of the District       )
of Columbia Public Schools,      )
                                 )
            Defendant.           )
_____)
```

### MEMORANDUM OPINION

Plaintiff Melissa Cooper ("Ms. Cooper") brings this action against Kaya Henderson, in her official capacity as the Chancellor of the District of Columbia Public Schools ("DCPS") alleging (1) disability discrimination, failure to accommodate, and retaliation for protected activity, in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*; (2) discrimination on the basis of race and gender and retaliation for protected activity, in violation of the Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*; (3) discrimination on the basis of age and retaliation for protected activity, in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*; and (4) retaliation for protected activity in violation of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et*

*seq.* Am. Compl., Docket No. 25. Chancellor Henderson moves to dismiss the amended complaint. *See generally* Def.'s Mot., Docket No. 27. Upon consideration of the motion, the response and reply thereto, the applicable law, the entire record, and for the reasons stated below, Chancellor Henderson's motion to dismiss is **GRANTED in part, and DENIED in part.**

## I.    BACKGROUND

Ms. Cooper is an African-American female over the age of forty. Am. Compl., ¶ 8. Ms. Cooper was hired by DCPS in 1980 to serve as a special education teacher at Roosevelt Senior High School. *Id.* ¶¶ 8, 10. At some point during Ms. Cooper's tenure at DCPS, she suffered an injury to her foot and requested leave to receive surgery. *Id.* ¶ 13. Following surgery, Ms. Cooper required crutches and an orthopedic boot to ambulate. *Id.* ¶ 14.

Ms. Cooper's classroom was located on the upper floor of Roosevelt Senior High School. *Id.* When she returned from her surgery, she requested access to an elevator to accommodate her injury. *Id.* The only functioning elevator in the building was a freight elevator in a remote wing of the building, approximately one city block from the building's entrance. *Id.* ¶ 15. Use of the freight elevator involved use of a freight key and lifting a wrought iron door. *Id.* ¶ 14. In order to use the freight elevator, Ms. Cooper had to find someone with a key. *Id.* ¶ 15. The one individual with a key was often unavailable or difficult

to locate, causing Ms. Cooper to be late for class. *Id.* Ms. Cooper also requested a parking spot close to the building's entrance, but her request went unanswered. *Id.* ¶ 17.

Ms. Cooper alleges that the principal and assistant principal of Roosevelt Senior High frequently harassed her about her age, and that the harassment intensified after she returned from medical leave. *Id.* ¶ 16. Ms. Cooper alleges that she was reprimanded for arriving late to class and meetings. *Id.* ¶ 17. When she attempted to explain herself to management, her teaching rating was lowered by ten points. *Id.* ¶ 18.

Ms. Cooper alleges that she duly reported every action she believed to be discriminatory to the administration, the school principal, and her union, but received little response. *Id.* ¶ 20. She alleges that she received non-work-related telephone calls from the principal at all hours of the day and night, which she believes were intended to harass and intimidate her. *Id.* ¶ 23. She alleges that she was reprimanded in front of her students on a regular basis, which she believes was intended to humiliate her. *Id.* ¶ 24. Ms. Cooper believes the harassing conduct was intended to force her to retire. *Id.* ¶ 26. She alleges that various members of the administration reminded her of her seniority and inquired as to her retirement plans. *Id.* ¶ 26.

Ms. Cooper was discharged from her employment with DCPS on August 10, 2012. Def.'s Ex. 1, Docket No. 27-1 at 3. Ms. Cooper alleges that her discharge was discriminatory, and in retaliation for exercising rights under the FMLA. Compl. ¶¶ 29, 79. She further alleges that after her termination, her retirement paperwork was not processed for nearly two years, during which time she was without income or benefits. *Id.* ¶ 28. Ms. Cooper believes the delay in processing her retirement paperwork was in retaliation for her previous complaints to school management regarding discrimination. *Id.*

Ms. Cooper filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on December 20, 2013. Def's. Ex. 1 at 3. The allegations in the charge read as follows:

> I was hired in 1980 as a Special Education Teacher. On August 10, 2012, I was discharged. Prior to my discharge, I requested a reasonable accommodation in which I was denied. I was subjected to harassment.
>
> My employer provided no specifics concerning my termination of employment.
>
> I believe I have been discriminated against in violation of the Americans With Disabilities Act of 1990 because of my disability and in retaliation (hostile work environment and whistle blower). I believe I have been discriminated against in violation of the Age Discrimination In Employment Act of 1967 because of my age (58). Race + Hostile Work Environment.[1]

---

[1] While the body of the charge is typed, the phrase "Race + Hostile Work Environment" is handwritten in pen and initialed by Ms. Cooper. *See* Def.'s Ex. 1.

> My request for a reasonable accommodation did not cause
> undue hardship for my employer. Being denied the
> request, resulted in me being late to classes and
> meetings.

*Id.* On the charge, Ms. Cooper checked the boxes for "Race,"

"Retaliation," "Age," "Disability," and "Other," next to which

she wrote "Hostile Work Environment." *Id.* In the box entitled

"Date(s) Discrimination Took Place," the "Earliest" date of

discrimination is type-written as August 10, 2012, the date of

Ms. Cooper's termination. *Id.* For the "Latest" date of

discrimination, it appears Ms. Cooper crossed out the type-

written entry of August 10, 2012, and wrote in November 30,

2013. *Id.* Ms. Cooper signed the charge on November 25, 2013,

five days prior to her alleged "Latest" date of discrimination.

*Id.* Ms. Cooper also checked the box entitled "Continuing

Action." *Id.*

The EEOC issued Ms. Cooper a Dismissal and Notice of Rights

informing her that any lawsuit must be filed within 90 days of

her receipt of the notice. *Id.* at 1-2. The handwritten date on

the Notice indicates it was mailed May 30, 2014. *Id.* at 1. Ms.

Cooper filed her lawsuit on September 8, 2014.[2]

---

[2] While Ms. Cooper's initial complaint was uploaded to the
Court's electronic docket on September 9, 2014, the "Civil Cover
Sheet" accompanying the complaint is dated September 8, 2014.
For purposes of ruling on the instant motion to dismiss, given
that the Court must draw all reasonable inferences in the

Chancellor Henderson now moves to dismiss Ms. Cooper's amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). *See generally* Def.'s Mot. Chancellor Henderson raises four arguments in support of her motion: (1) the District of Columbia ("the District") is the proper defendant in this action and Ms. Cooper's failure to name the District is grounds for dismissal of her amended complaint; (2) Ms. Cooper's gender discrimination claim is barred because Ms. Cooper failed to exhaust her administrative remedies by asserting this claim in her charge before the EEOC; (3) Ms. Cooper's Title VII, ADA, and ADEA claims are barred for failure to timely file these claims with the EEOC, and for failure to timely bring these claims before this Court following the EEOC's issuance of a right-to-sue notice; and (4) Ms. Cooper's FMLA claims are barred for failure to bring suit within the two-year limitations period applicable to FMLA claims. *Id.* at 1-2.

## II.  STANDARD OF REVIEW

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a complaint." *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the

---

plaintiff's favor, the Court will presume the complaint was
filed on September 8, 2016.

6

defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks omitted). While detailed factual allegations are not necessary, the plaintiff must plead enough to "raise a right to relief above the speculative level." *Id.*

When ruling on a Rule 12(b)(6) motion, the Court may consider "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice." *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002). The Court must construe the complaint liberally in the plaintiff's favor and grant the plaintiff the benefit of all reasonable inferences deriving from the complaint. *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). The Court must not accept inferences that are "unsupported by the facts set out in the complaint." *Id.* "Nor must the court accept legal conclusions cast in the form of factual allegations." *Id.* "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

## III. DISCUSSION

### A. The District of Columbia will be substituted for Chancellor Henderson as defendant in this action.

Chancellor Henderson first argues that because Ms. Cooper's lawsuit is an employment discrimination action for money damages, the proper defendant in this action is Ms. Cooper's employer, the District of Columbia, and not Chancellor Henderson. Def.'s Mot. at 1, 3-4. Ms. Cooper responds that the lawsuit was not intended to sue Chancellor Henderson in her individual capacity, and that she named Chancellor Henderson "solely in her official capacity in order to reach the state agency." Pl.'s Opp., Docket No. 29 at 1-2.[3]

There is little dispute that the proper defendant in an action by a District employee for employment discrimination is the District of Columbia itself. *See Smith v. Janey*, 664 F. Supp. 2d 1, 8 (D.D.C. 2009) ("there is no individual liability under Title VII, the ADEA or the ADA."); *see also Blue v. District of Columbia*, 850 F. Supp. 2d 16, 22 (D.D.C. 2012) ("Courts in this District have held on numerous recent occasions that DCPS is *non sui juris* – that is, non-suable as an entity separate from the District of Columbia."). Therefore, the relevant dispute for purposes of resolving Chancellor

---

[3] Ms. Cooper's surreply further clarifies that her intention was to sue the District "as a government agency." Pl.'s Surrep., Docket No. 33, ¶ 16.

Henderson's motion is the *effect* of Ms. Cooper's failure to name the District as a defendant in her amended complaint. Chancellor Henderson argues that Ms. Cooper's failure to name the District is grounds for dismissal of the lawsuit. Def.'s Mot. at 1. Ms. Cooper argues that the Court should construe Chancellor Henderson's motion to dismiss as a motion to substitute the District for Chancellor Henderson as the defendant, and should order substitution of the District rather than dismiss the action. Pl.'s Opp. at 3.

Chancellor Henderson's motion to dismiss argues that substituting the proper party or allowing Ms. Cooper leave to amend her complaint would be futile as Ms. Cooper's claims would not survive a motion to dismiss. Def.'s Mot. at 4. Based on the Court's contemporaneous determination that Ms. Cooper's amended complaint does survive a motion to dismiss in part, *see infra* Section III.B–III.E, the Court rejects this argument as a basis for dismissing Ms. Cooper's amended complaint.

Chancellor Henderson's reply brief raises several additional arguments in support of dismissing Ms. Cooper's amended complaint for failure to name the proper party, each of which will be addressed in turn. First, Chancellor Henderson argues that Ms. Cooper "does not refute or even address [Chancellor] Henderson's argument that she is not a proper defendant" and accordingly, "the Court should deem those

arguments unopposed and grant Chancellor Henderson's motion to dismiss." Def.'s Rep., Docket No. 31 at 3. Chancellor Henderson misunderstands Ms. Cooper's argument: Ms. Cooper does not dispute that Chancellor Henderson is not a proper party, but argues that substitution, rather than dismissal, is appropriate under the circumstances. Pl's. Mot. at 1-3; Pl.'s Surrep., Docket No. 33 at 5. Hence, Ms. Cooper has not waived her opposition to Chancellor Henderson's motion to dismiss for failure to name the proper defendant.

Second, Chancellor Henderson argues that the Court should *not* construe Ms. Cooper's motion to dismiss as a motion to substitute the proper party because "Chancellor Henderson has *not* moved to substitute the District for her, nor has [Ms. Cooper] moved to amend her complaint to name the District as a defendant." Def.'s Rep., at 2 (emphasis in original). Ms. Cooper responds that even though she has not formally requested substitution, the Court may *sua sponte* order substitution of the proper defendant. Pl.'s Surrep., Docket No. 33 at 4.[4]

---

[4] Ms. Cooper asserts that the basis for this substitution is found in Federal Rule of Civil Procedure 25(d) which provides for automatic substitution of public officers named in their official capacity when that officer "dies, resigns, or otherwise ceases to hold office while the action is pending." Fed. R. Civ. P. 25(d). Ms. Cooper's reliance on Rule 25(d) is misplaced. First, Chancellor Henderson remains Chancellor of DCPS, and second, there is no individual liability under Title VII, the ADA, or the ADEA. *See Smith*, 664 F. Supp. 2d at 8. Hence, contrary to Ms. Cooper's assertion, Rule 25(d) is an improper

Where a plaintiff, through unknowing mistake, names an improper defendant in her complaint, many courts in this district have *sua sponte* ordered substitution of the proper defendant. *Sampson v. D.C. Dep't of Corr.*, 20 F. Supp. 3d 282, 285 (2014) (*sua sponte* ordering substitution of the District of Columbia where plaintiff had named the D.C. Department of Corrections); *Paul v. Didizian*, 292 F.R.D. 151, 151 n. 1 (D.D.C. 2013) (*sua sponte* ordering substitution of the District of Columbia where *pro se* plaintiff had named D.C. Office of Risk Management); *Henneghan v. Dist. of Columbia Pub. Sch.*, 597 F. Supp. 2d 34, 37 (D.D.C. 2008) (*sua sponte* ordering substitution of the District of Columbia where *pro se* plaintiff had named DCPS); *Di Lella v. Uni. of Dist. of Columbia*, 570 F. Supp. 2d 1, 1 n.1 (D.D.C. 2008) (*sua sponte* ordering substitution of the Board of Trustees of the University of the District of Columbia where *pro se* plaintiff had named the University of the District of Columbia). While in most of these cases the plaintiff was proceeding *pro se*, some courts in this district have *sua sponte* ordered substitution where the plaintiff was represented by counsel. *Sampson*, 20 F. Supp. 3d at 285; *Bennet v. Henderson*, 10-CIV-1680, 2011 WL 285871, at *1 (D.D.C. Jan. 28, 2011); (*sua sponte* ordering substitution of the District of Columbia for

---

vehicle for substituting the District of Columbia for Chancellor Henderson as defendant in this action.

Chancellor Henderson). In view of this persuasive authority, the Court is not convinced that Ms. Cooper's failure to name the District in her amended complaint warrants dismissal of her case.

Finally, Chancellor Henderson argues that substituting the District of Columbia is inappropriate because Ms. Cooper has yet to serve either the Mayor or the Attorney General of the District of Columbia with a summons and complaint. Def.'s Rep. at 4-6 (citing *Arrington v. Dist. of Columbia*, 673 A.2d 674, 681 (D.C. 1996)). In *Arrington*, the plaintiff's lawsuit named "D.C. General Hospital" as defendant and attempted to serve process on the hospital by mailing the summons and complaint to the hospital's address in southeast Washington, D.C. *Arrington*, 673 A.2d at 676. Later, when the plaintiff moved to amend her complaint to name the District of Columbia, the District opposed the motion arguing the action was time-barred because the suit against the District had not been filed, and the District had not been served, within the applicable statute of limitations. *Id.* at 677. The D.C. Court of Appeals, agreeing with the District, held that the plaintiff's complaint against the District was time-barred:

> The District had received no notice of the suit prior to
> the expiration of the limitations period. Mailing of the
> summons and complaint to a hospital at an intersection
> in southeast Washington, D.C. provided the District with
> no more notice than would have been effected by serving

a clerk at the Department of Sanitation or a police officer at the Fourth District. That is not sufficient.

Like any large metropolis, the District of Columbia is required to defend thousands of cases every year. The Corporation Counsel, as the attorney for the District, must keep track of each of these cases and must settle or litigate all of them. This formidable task cannot be carried out successfully if someone who wishes to sue the District can satisfy her responsibilities, as Ms. Arrington attempted to do, by filing her complaint against a different entity and by mailing the complaint and summons to an address which has no connection whatever with the defense of lawsuits against the District. Indeed, an important reason for requiring plaintiffs to sue the District (rather than a District-operated instrumentality) and for requiring service on the Mayor and the Corporation Counsel (rather than on that instrumentality is to enable the District's lawyers to become and remain apprised of their docket and to conduct their legal business in an organized and efficient manner.

*Id.*

*Arrington*, however, is clearly distinguishable from the present facts. Here, the Office of Attorney General for the District of Columbia, the same Office charged with representing the District of Columbia, has been representing Chancellor Henderson, in her official capacity, throughout this action.[5] Unlike *Arrington*, this is not a case where the complaint and summons were sent to an address with "no connection whatever with the defense of lawsuits against the District." Indeed, in

---

[5] Chancellor Henderson waived formal service on February 26, 2015, and the Office of the Attorney General for the District of Columbia entered its appearance on February 27, 2015. *See* Waiver of Service, Docket No. 10; Notice of Appearance, Docket No. 8.

this case, it appears the District's lawyers were able to "become and remain apprised of their docket and to conduct their business in an organized and efficient manner." The rationale underlying *Arrington* is inapplicable under the circumstances.

Under Federal Rule of Civil Procedure 15(c)(1)(C), an amendment to a complaint changing the name of the defendant relates back to the date of the original complaint when the new party "received such notice of the action that it will not be prejudiced in defending on the merits" and "knew or should have known that the action would have been brought against it, but for a mistake concerning the party's identity." Fed. R. Civ. P. 15(c)(1)(C). For example, in *Kangethe v. Dist. of Columbia*, the plaintiff initially filed his lawsuit against the D.C. Office of Employment Services ("DOES"), a non-suable entity within the District of Columbia. 75 F. Supp. 3d 433, 438 (D.D.C. 2014). When the plaintiff amended his complaint to name the District, the court held that the plaintiff's complaint against the District related back to the filing of the original complaint because the plaintiff "mailed even his first complaint to the Attorney General's office" and because "the office has represented the defendant in this case continuously since it was filed naming DOES." 75 F. Supp. 3d at 438-39. Similarly, in this case, because the D.C. Attorney General's Office has been defending this lawsuit since Chancellor Henderson waived formal

14

service, the Court finds that the District will not be prejudiced in defending this action on the merits. Further, the District either knew or should have known that but for Ms. Cooper's mistake in naming Chancellor Henderson rather than the District, this action would have been brought against the District. *See Kangethe*, 75 F. Supp. 3d at 437-39; *see also Rendall-Speranza v. Nassim*, 107 F.3d 913, 918 (D.C. Cir. 1996) ("The commentary to Rule 15(c) clearly indicates that the rule is intended to be a means for correcting the mistakes of plaintiffs suing official bodies in determining which party is the proper defendant.")(internal citations omitted).

Moreover, "it is well settled that the Federal Rules of Civil Procedure are to be liberally construed to effectuate the general purpose of seeing that cases are tried on the merits and to dispense with the technical procedural problems and thus that amendments pursuant to Rule 15(c) should be freely allowed." *Bayatfshar v. Aeronautical Radio, Inc.*, 934 F. Supp. 2d 138, 145 (D.D.C. 2013) (quoting *Staren v. American Nat'l Bank & Trust Co. of Chicago*, 529 F.2d 1257, 1263 (7th Cir. 1976) (alterations omitted)). Therefore, the Court does not find that Ms. Cooper's mistake in naming Chancellor Henderson rather than the District is grounds for dismissal of the amended complaint.

Accordingly, the Court **DENIES** Chancellor Henderson's motion to dismiss for failure to name the proper party, and *sua sponte*

substitutes the District of Columbia for Chancellor Henderson as the defendant in this action.

**B. Ms. Cooper will be permitted to proceed to discovery on her ADA, Title VII, and ADEA claims *only* with respect to her claim that the District delayed in processing her retirement paperwork in retaliation for her protected activity.**

Chancellor Henderson argues that Ms. Cooper's ADA, Title VII, and ADEA claims must be dismissed because Ms. Cooper failed to timely exhaust these claims before the EEOC. Def.'s Mot. at 6-8. Ms. Cooper responds with a general assertion that these claims were timely exhausted. Pl.'s Opp. at 9-10. Before filing a lawsuit under the ADA, Title VII, or ADEA, a plaintiff must exhaust her administrative remedies by filing a charge of discrimination with the EEOC within 180 days of the alleged unlawful employment practice. 29 U.S.C. § 626(d)(1); 42 U.S.C. § 2000e-5(e)(1).[6] If the complainant has first instituted proceedings with a state or local agency, the limitations period is extended to 300 days. *See Ashraf-Hassan v. Embassy of France*

---

[6] The ADA does not include its own statute of limitations, but adopts the procedures set forth in Title VII. 42 U.S.C. § 12117(a) ("The powers, remedies, and procedures set forth in sections 2000e-4, 2000e-5, 2000e-6, 2000e-8, and 2000e-9 of this title shall be the powers, remedies, and procedures this subchapter provides . . . to any person alleging discrimination on the basis of disability in violation of any provision of this chapter.").

*in U.S.*, 878 F. Supp. 2d 164, 170 (D.D.C. 2012); *Gordon v. Dist. of Columbia*, 605 F. Supp. 2d 239, 244 (D.D.C. 2009).

The amended complaint alleges a number of allegedly discriminatory and retaliatory incidents that occurred prior to Ms. Cooper's termination on August 10, 2012,[7] alleges that Ms. Cooper's termination was itself discriminatory and retaliatory in nature, and alleges that following her termination her retirement paperwork was neglected and not processed for two years in retaliation for her protected activity. Am. Compl., ¶¶ 16-18, 23-29.

Ms. Cooper's charge of discrimination is dated November 25, 2013, and bears a stamp indicating it was received by the EEOC on December 20, 2013. Def.'s Ex. 1.[8] Ms. Cooper does not allege that she first filed a charge with the D.C. Office of Human

---

[7] While the amended complaint does not indicate the date of Ms. Cooper's termination, the EEOC charge of discrimination, which Ms. Cooper references in the amended complaint, states that she was terminated on August 10, 2012.

[8] "While a court may not consider 'matters outside the pleadings' in evaluating a motion to dismiss under Rule 12(b)(6) without converting the motion to one for summary judgment under Rule 56, *see* Fed. R. Civ. P. 12(d), documents that are referenced in, or are an integral part of the complaint are deemed not 'outside the pleadings.'" *Peters v. Dist. of Columbia*, 873 F. Supp. 2d 158, 179 n. 20 (D.D.C. 2012). Ms. Cooper references her EEOC charge in her complaint. Am. Compl. at ¶ 30. Hence, the Court may consider the charge of discrimination without converting Chancellor Henderson's motion to dismiss into a motion for summary judgment.

Rights, hence the 180-day deadline, rather than the 300-day extended deadline, applies. Therefore, in order to timely exhaust her administrative remedies with respect to her termination, Ms. Cooper needed to file a charge of discrimination with the EEOC by no later than February 6, 2013. Her charge, dated November 25, 2013 and marked received by the EEOC on December 20, 2013 comes too late.[9] Accordingly, Ms. Cooper's ADA, Title VII, and ADEA claims concerning her termination, or any conduct occurring before her termination must be dismissed for failure to timely file a charge of discrimination before the EEOC.

Ms. Cooper's claims under the ADA, Title VII, and ADEA must be limited to events occurring on or after the date 180 days prior to the date her charge was filed with the EEOC. In her amended complaint, Ms. Cooper alleges that her employer neglected and delayed processing her retirement paperwork in retaliation for her protected activity. Am. Compl., ¶ 28. She does not specify the date upon which her retirement paperwork was processed, except to say that it was two years after her discharge. *Id.* This indicates the delay in processing her paperwork took place through about August 20, 2014. Therefore,

---

[9] The Court notes that even if the 300-day limitations period applied, Ms. Cooper's claims relating to her termination or conduct before that date would still be time-barred.

the delayed processing of Ms. Cooper's retirement paperwork would have been ongoing at the time she filed her charge.

On her EEOC charge, Ms. Cooper checked the boxes for both "retaliation" and "continuing action." Def.'s Ex. 1 at 3. Though the written allegations in the EEOC charge fail to mention the delay in processing her retirement paperwork, the Court considers it plausible that the "continuing action" designation was intended to refer to the ongoing alleged retaliation concerning the processing of her retirement paperwork. Further, because this retaliation was ongoing at the time Ms. Cooper filed her charge with the EEOC, the charge is deemed timely.

Accordingly, Chancellor Henderson's motion to dismiss Ms. Cooper's claims pursuant to the ADA, Title VII, and ADEA is **GRANTED** in part, and **DENIED** in part. Ms. Cooper will be permitted to proceed to discovery on her claims concerning the allegedly retaliatory delayed processing of her retirement paperwork. The remainder of her ADA, Title VII, and ADEA claims are dismissed as time-barred.

### C. Ms. Cooper's gender discrimination claim must be dismissed due to her failure to raise this claim before the EEOC.

Chancellor Henderson also argues that Ms. Cooper's gender discrimination claims under Title VII must be dismissed because these claims were not raised in Ms. Cooper's charge before the EEOC. Def.'s Mot. at 8-9. Ms. Cooper responds that her amended

complaint alleges that she filed a charge of sex discrimination
with the EEOC prior to filing suit in this Court. Pl.'s Opp. at
9.

As stated above, before commencing an action based on Title
VII in federal court, a plaintiff must first exhaust her
administrative remedies by filing a timely charge of
discrimination with the EEOC. *Lewis v. City of Chicago, Ill.*,
560 U.S. 205, 210 (2010). The lawsuit following the EEOC charge
is "limited in scope to claims that are like or reasonably
related to the allegations of the charge and growing out of such
allegations." *Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir.
1995), *cert. denied*, 519 U.S. 811 (1996). Specifically, a
plaintiff's claims "must arise from the administrative
investigation that can reasonably be expected to follow the
charge of discrimination." *Id.* (citing *Chisholm v. U.S. Postal
Serv.*, 665 F.2d 482, 491 (4th Cir. 1981)). "While the boxes [on
the EEOC charge form] aid a claimant in identifying the nature
of her charge, a claimant is not necessarily limited to the
boxes she selected if she provides the basis for her claim in
her written explanation." *Robinson-Reeder v. Am. Council on
Educ.*, 532 F. Supp. 2d 6, 13 (D.D.C. 2008).

In her charge before the EEOC, Ms. Cooper did not check the
box for discrimination on the basis of "sex," nor did she
provide any allegations of sex or gender discrimination in her

written complaint. As Ms. Cooper failed to raise any allegation of sex or gender discrimination in her charge before the EEOC, Ms. Cooper may not proceed with her gender discrimination claim in this Court. Moreover, the amended complaint contains no facts from which gender discrimination can be inferred. Hence, even if Ms. Cooper had exhausted her administrative remedies with respect to her gender discrimination claim, her gender discrimination claim could be dismissed for failure to state a plausible claim. Accordingly, the Court finds an additional basis for dismissing Ms. Cooper's gender discrimination claims. Chancellor Henderson's motion to dismiss Ms. Cooper's gender discrimination claims is therefore **GRANTED**.

> **D. With respect to Ms. Cooper's surviving claim for retaliation under the ADA, Title VII, and the ADEA, Ms. Cooper is entitled to discovery on the issue of whether she filed suit in this Court within 90 days of receiving her right-to-sue notice.**

Chancellor Henderson argues that Ms. Cooper's Title VII and ADA claims must be dismissed because she failed to file suit within 90 days of receiving her right-to-sue notice. Def.'s Mot. at 7-8. Chancellor Henderson argues that because the notice is dated May 30, 2014, and Ms. Cooper's lawsuit was filed on September 8, 2014 – that is, 101 days later, Ms. Cooper's lawsuit was not timely filed. *Id.* at 7. Ms. Cooper responds by referring to her amended complaint wherein she alleges that "this lawsuit has been commenced within 90 days of *receipt* of

the Notice of Right to Sue." Pl.'s Opp. at 10 (citing Am.
Compl., ¶ 4) (emphasis added).

"A person aggrieved under Title VII who seeks to file a
civil action must do so within ninety days from receipt of the
EEOC right-to-sue notice." *Griffin v. Acacia Life Ins. Co.*, 151
F. Supp. 2d 78, 80 (D.D.C. 2001); *see also* 42 U.S.C. § 2000e-
5(f)(1) ("If a charge filed with the Commission . . . is
dismissed by the Commission . . . the Commission . . . shall so
notify the person aggrieved and within ninety days after the
giving of such notice a civil action may be brought against the
respondent named in the charge."); *Blackwell v. SecTek, Inc.*, 61
F. Supp. 3d 149, 154 n. 3 (D.D.C. 2014) (noting that because the
ADA incorporates Title VII procedures, a plaintiff must bring a
lawsuit pursuant to the ADA within 90 days of receipt of the
right-to-sue notice).[10]

"When the date that a right-to-sue notice was received is
unknown or disputed, courts routinely presume that the notice
was received either three days or five days after it was
received." *Mack v. WP Co., LLC*, 923 F. Supp. 2d 294, 299 (D.D.C.

---

[10] Although Chancellor Henderson does not argue that Ms. Cooper's
ADEA claim must be dismissed for failure to file suit within 90
days of receipt of the right-to-sue notice, the ADEA contains
the same requirement. 29 U.S.C. § 626(e); *Greer v. Bd. Trustees
Univ. Dist. of Columbia*, 113 F. Supp. 3d 297, 306 (D.D.C. 2015).
Accordingly, Ms. Cooper's claims for retaliation under the ADEA
may also be dismissed if she failed to file suit within 90 days
of her receipt of the right-to-sue notice.

2013) (citing *Nkengfack v. Am. Ass'n of Retired Persons*, 818 F. Supp. 2d 178, 181 (D.D.C. 2011); *Ruiz v. Vilsack*, 763 F. Supp. 2d 168, 171 (D.D.C. 2011)). That presumption, however, may be rebutted by contrary evidence. *Greer*, 113 F. Supp. 3d at 306.

Ms. Cooper is entitled to discovery on the issue of when she received her right-to-sue notice from the EEOC. Applying the more generous 5-day presumption from the May 30, 2014 mailing date, Ms. Cooper would have received the notice June 5, 2014, and hence, her lawsuit filed on September 8, 2014, or 95 days later, appears untimely. But Ms. Cooper must be afforded an opportunity to rebut the three-day or five-day presumption, and she will be permitted to conduct discovery for that purpose.

Accordingly, with respect to Ms. Cooper's claims for retaliation with respect to the processing of her retirement paperwork, Ms. Cooper is entitled to discovery on the issue of whether she filed this lawsuit within 90 days of her receipt of the right-to-sue notice. Chancellor Henderson's motion to dismiss Ms. Cooper's ADA and Title VII claims for failure to timely file suit in this Court is therefore **DENIED**.

> **E. Ms. Cooper has alleged a willful FMLA violation, and is therefore entitled to a three-year statute of limitations.**

Chancellor Henderson argues that Ms. Cooper's FMLA claims are barred by a two-year statute of limitations. Def.'s Mot. at 8-9. Ms. Cooper argues that she has alleged a willful violation

of the FMLA, thereby entitling her to a three-year statute of limitations. Pl.'s Opp. at 4-9. The FMLA prohibits employers from interfering with or denying an employee's right to take leave under the Act, and further prohibits an employer from discharging or discriminating against an employee who returns from leave. 29 U.S.C. § 2615(a); *Dahlman v. Am. Ass'n of Retired Persons*, 791 F. Supp. 2d 68, 79 (D.D.C. 2011). An action under the FMLA must be brought within two years of the alleged violation, or within three years if the violation is alleged to have been willful. 29 U.S.C. § 2617(c). "The three-year statute of limitations for willful violations does not apply unless the complaint contains some express or implied allegation of willful conduct." *Hodge v. United Airlines*, 666 F. Supp. 2d 14, 23 (D.D.C. 2009)(citing *Sampson v. Citibank, F.S.B.*, 53 F. Supp. 2d 13, 19 (D.D.C. 1999)). "In the context of FMLA, willful conduct is generally viewed as an employer that knows its conduct to be wrong or has shown reckless disregard for the matter in light of the statute." *Id; see also McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1998)("The word 'willful' is widely used in the law, and, although it has not by any means been given a perfectly consistent interpretation, it is generally understood to refer to conduct that is not merely negligent.").

Ms. Cooper has alleged a willful violation of FMLA and is therefore entitled to the three-year statute of limitations. Ms.

Cooper alleges that when she returned from FMLA leave, she was harassed by her superiors, given a ten-point deduction in her performance evaluation, and eventually terminated. Am. Compl., ¶¶ 16, 23, 26. Ms. Cooper alleges that these actions were taken in retaliation for her protected activity with the intent to humiliate and harass her. *Id.* ¶¶ 24, 26. While Ms. Cooper does not use the word "willful" in her complaint, the allegations clearly set forth an intentional pattern of harassment and retaliation, and "not merely negligent" behavior. For purposes of surviving a motion to dismiss, these allegations are sufficient. *See Hodge*, 666 F. Supp. 2d at 23 (citing *Ricco v. Potter*, 377 F. 3d 599, 603 (6th Cir. 2004)).

Ms. Cooper filed her complaint on September 8, 2014, approximately two years and one month after her termination. Compl., Docket No. 1; Def.'s Ex. 1. Therefore, Ms. Cooper filed suit well-within the three-year statute of limitations for willful FMLA violations.

Finally, Chancellor Henderson argues that even if the three-year statute of limitations applied, Ms. Cooper failed to file suit against her employer, the District of Columbia, within the three-year limitations period, which expired on August 20, 2015. As discussed above, Ms. Cooper's claims against the District of Columbia will relate back to the date she filed her original complaint in this Court. *See supra* Section III.A; *see*

*also Hartley v. Wilfert*, 931 F. Supp. 2d 230, 233 (D.D.C. 2013) (noting that under the relation-back doctrine, the expiration of the applicable statute of limitations does not preclude the plaintiff from substituting the proper defendant so long as the requirements of Rule 15(c) are met). Accordingly, Chancellor Henderson's motion to dismiss Ms. Cooper's FMLA claim is **DENIED**.

## IV.  CONCLUSION

For the reasons stated above, Chancellor Henderson's motion is **GRANTED** in part, and **DENIED** in part, and the District of Columbia is substituted for defendant Kaya Henderson. An appropriate order accompanies this Memorandum Opinion.

**Signed:**      **Emmet G. Sullivan**
              **United States District Judge**
              **March 31, 2016**