**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| MELISSA COOPER, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) |
| | ) |
| DISTRICT OF COLUMBIA, | ) Civil Action No. 14-1526 (EGS) |
| | ) |
| | ) |
| Defendant. | ) |
| | ) |

**MEMORANDUM OPINION**

## I. Introduction

Plaintiff Melissa Cooper ("Ms. Cooper") brings this action against the defendant District of Columbia ("District") after she was terminated from her position as a Special Education Teacher in the District of Columbia Public School ("DCPS") system. Pending before the Court is the District's motion for summary judgment on her two remaining claims:[1] (1) retaliation in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*; Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*; and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*; and (2) retaliation for protected activity under the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.* The

---

[1] Ms. Cooper's claims for discrimination and failure to accommodate on the basis of disability, race, gender, and age were dismissed. *Cooper v. Henderson*, 174 F. Supp. 3d 193, 202, 205 (D.D.C. 2016).

1

Court has carefully considered the motion, the response and reply thereto, the applicable law, and the entire record herein. The Court finds that there is no genuine dispute as to any material fact, and thus, for the reasons stated below, the District's motion for summary judgment is **GRANTED**.

## II. Background

### A. Federal Rule of Civil Procedure 56(e), Local Rule 7(h), and Ms. Cooper's Pleading Defects

When a party moves for summary judgment, it must accompany its motion with a statement of material facts as to which it contends there is no genuine issue. LCvR 7(h)(1). The movant must reference the specific parts of the record relied on in support of the assertions of fact in the statement. *Id*. In turn, the non-movant's opposition brief must be accompanied by a concise statement of genuine issues setting forth all material facts as to which it contends a genuine issue exists. *Id.* That statement of genuine issues also must include specific references to the evidentiary record. *Id.* But if a party "fails to properly address another party's assertion of fact . . . the court may . . . consider th[at] fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e). That is, a court "may assume that facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the

motion." LCvR 7(h)(1). However, a material fact in the movant's statement is not "controverted" if a non-movant supplies additional facts and "factual context" but does not actually dispute the movant's asserted fact. *Toomer v. Mattis*, No. 11-2216, 2017 WL 3084376 at *2 (D.D.C. July 19, 2017) (citing *Gibson v. Office of the Architect of the Capitol*, No. 00-2424, 2002 WL 32713321, at *1 n.1 (D.D.C. Nov. 19, 2002)).

The District contends, with citations to the record, that there are nine facts as to which there is no genuine issue. Def. Stmt., ECF No. 48 at 3-4. In response, Ms. Cooper contends that twenty-nine facts are in dispute. Pl. Stmt., ECF No. 51-2.[2] Of these, only one is supported by citation to the record. *Id.* at ¶ 2. Thirteen are irrelevant because they relate to a claim that was dismissed. *Id.* at ¶¶ 4-17; *see Cooper v. Henderson*, 174 F. Supp. 3d 193, 202-03 (D.D.C. 2016)(dismissing Ms. Cooper's claims for failure to accommodate). The remaining statements of fact either cite to an affidavit that was not filed on the docket[3] or are unsupported.

Therefore, the Court draws from facts submitted by the District which went undisputed or were inadequately disputed by

[2] Ms. Cooper's Statement of Disputed Facts is not numbered sequentially, but the Court will cite each fact as if it had been numbered sequentially.
[3] Ms. Cooper has been on notice of the omitted affidavit since the District filed its reply motion on March 27, 2017. *See* Def. Reply, ECF No. 52. Ms. Cooper did not seek leave to file the missing affidavit. *See generally* Docket for Civil Action No. 14-1526.

Ms. Cooper, Ms. Cooper's asserted facts where they are relevant and supported by record evidence, as well as the factual record. *See Dage v. Johnson*, 537 F. Supp. 2d 43, 52-54 (D.D.C. 2008) (finding no error when the Court assumed the movant's material facts were admitted because the non-movant's statements "did not cite to record evidence")(internal quotations omitted).

### B. Factual Background

Ms. Cooper was employed by DCPS as a Special Education Teacher for over thirty years, from 1980 to 2012. Def. Mot., ECF No. 48 at ¶¶ 1-2. On August 10, 2012, Ms. Cooper was terminated from her position at Roosevelt Senior High School. Termination Notice, ECF. No. 48-1**.** She is now retired.

Ms. Cooper's problems with her school's Principal and Assistant Principal began in the 2010-2011 school year and continued until her 2012 termination. *See generally* Pl. Interrog., ECF. No. 48-8. Starting in 2010, she had various disputes with administrators regarding perceived unfair treatment. *Id.* at 2-9. In the 2010-2011 school year, from April 4, 2011 until June 10, 2011,[4] Ms. Cooper took FMLA medical leave due to stress. Pl. Dep., ECF No. 48-9 at 13:16-22. That same school year, Ms. Cooper received a "minimally effective" rating pursuant to DCPS' "Effectiveness Assessment System for School-

---

[4] In Ms. Cooper's interrogatory response, she indicated that she was on leave from April 4, 2011 to May 31, 2011. Pl. Interrog., ECF No. 48-8 at 6. This date discrepancy does not affect the analysis.

Based Personnel." 2010-2011 Assessment, ECF No. 48-2. Her difficulties with school administration continued into the 2011-2012 school year. Ms. Cooper took a second FMLA medical leave of absence to undergo Achilles tendon surgery from December 1, 2011 through January 10, 2012. Pl. Dep., ECF No. 48-9 at 52:1-6, 59:14-22. That year, Ms. Cooper again received a "minimally effective" rating. 2011-2012 Assessment, ECF No. 48-3.

On August 10, 2012, Ms. Cooper was terminated subject to DCPS procedure, which subjects employees receiving a minimally effective rating for two consecutive years to removal. Termination Notice, ECF No. 48-1. At some point after she was terminated, Ms. Cooper challenged the decision with the Office of Employee Appeals ("OEA"). OEA Appeal, ECF No. 51-5. While it is unclear when the OEA case was officially resolved, the OEA Administrative Judge memorialized in a June 23, 2014 Order that Ms. Cooper and DCPS indicated they were settling the dispute through retirement. *Id.*

Ms. Cooper also filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on December 20, 2013, alleging that she had been subjected to race, age, and disability discrimination; was subjected to retaliation for protected activity; and endured a hostile work environment. EEOC Charge, ECF No. 48-5. The EEOC rejected her claim on May 30, 2014 and sent notice advising Ms. Cooper of her right to sue the

District within 90 days of receipt. EEOC Dismissal, ECF Nos. 51-3, 48-6. The notice was stamped for mailing on June 4, 2014. *Id.* Ms. Cooper filed her claim in this Court on September 9, 2014.

Ms. Cooper is now retired. She first approached DCPS to determine when she would be eligible for retirement in April 2011 and was told to return for a retirement calculation in the next school year. Pl. Dep., ECF No. 48-9 at 84:2-10. In November 2011, she requested and received a retirement computation, or an analysis of when an employee is eligible to retire, and learned that she was eligible for retirement in November 2012. *Id.* at 84:11-18. In July or August 2012,[5] Ms. Cooper submitted another computation form to calculate her future retirement benefits. *Id.* at 84:19-85:22; Computation Form, ECF No. 51-4. At some point, Ms. Cooper was informed by an unnamed DCPS attorney that she could not receive retirement benefits because she had been terminated. Pl. Dep., ECF No. 48-9 at 88:9-15. On June 26, 2014, Ms. Cooper submitted a final application for retirement. Pl. Opp'n, ECF No. 51 at 12-13; Pl. Dep., ECF No. 48-9 at 86:2-4. Her retirement paperwork was processed and she began receiving benefits in August 2014. Pl. Dep., ECF No. 48-9 at 91:19-21.

---

[5] Ms. Cooper testified that she submitted the computation form on July 31, 2012, Pl. Dep., ECF No. 48-9 at 84:19-85:1, but the form itself is dated "July 32, 2012" and Ms. Cooper dated it signed on August 1, 2012. Computation Form, ECF No. 51-4.

## III. Standard of Review

Pursuant to Federal Rule of Civil Procedure 56, summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Waterhouse v. District of Columbia*, 298 F.3d 989, 991 (D.C. Cir. 2002). The moving party must identify "those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). To defeat summary judgment, the nonmoving party must demonstrate that there is a genuine issue of material fact. *Id.* at 324. A material fact is one that is capable of affecting the outcome of the litigation, while a genuine dispute is one where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Further, in the summary judgment analysis "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. However, rule 56(e) requires the nonmoving party to go beyond the pleadings to demonstrate that there is a genuine issue for trial. *Celotex*, 477 U.S. 317 at 324.

## IV. Analysis

### A. Ms. Cooper Failed to Establish a Retaliation Claim Under the ADA, ADEA, and Title VII

*i.   Ms. Cooper's Claim is Time-Barred*

The District first argues that it is entitled to judgment on Ms. Cooper's ADA, Title VII, and ADEA claim because her complaint was not filed within ninety days of receiving the EEOC right-to-sue notice and therefore the claim is time-barred. Def. Mot., ECF No. 48 at 1. "If a charge filed with the Commission . . . is dismissed by the Commission . . . the Commission . . . shall so notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge." 42 U.S.C. § 2000e-5(f)(1). "No matter how slight the tardiness, a court is not at liberty to disregard the 90-day deadline out of a vague sympathy for any particular plaintiff." *Mack v. WP Company*, 923 F. Supp. 2d 294, 301 (D.D.C. 2013)(quoting *Turner v. Afro-American Newspaper Co.*, 572 F. Supp. 2d 71, 73 (D.D.C. 2008) (finding the plaintiff, who filed one day late, time-barred); citing *Smith v. Dalton,* 971 F. Supp. 1, 2-3 (D.D.C. 1997) (finding the plaintiff, who filed one day late, time-barred)). It is "well-settled" that the ninety-day, statutory time limit for filing a claim is "subject to waiver, estoppel, and equitable tolling." *Smith v. Holder*, 806 F. Supp. 2d 59, 62-63 (D.D.C.

2011)(citations omitted). Application of equitable tolling is "solely within the Court's discretion," however it is "only exercise[d] . . . in a limited number of 'extraordinary and carefully circumscribed instances.'" *Id.* at 63 (quoting *Mondy v. Secretary of the Army*, 845 F.2d 1051, 1057 (D.C. Cir. 1988)). To benefit from equitable tolling, the plaintiff must "plead and provide that the delay in meeting the 90-day limit was 'more than a garden variety claim of excusable neglect.'" *Turner*, 572 F. Supp. 2d at 73 (quoting *Irwin v. Department of Veterans Affairs,* 498 U.S. 89, 96 (1990)).

If the date of receipt is unknown for purposes of the ninety-day calculation, "courts routinely presume that the notice was received either three days or five days after it was mailed." *Mack*, 923 F. Supp. 2d at 299 (internal citations omitted). That presumption, however, may be rebutted by contrary evidence. *Greer v. Board of Trustees of the University of the District of Columbia*, 113 F. Supp. 3d 297, 306 (D.D.C. 2015). "For the purposes of computing the ninety-day period within which the suit must be filed, the court begins counting the day after the right-to-sue letter was received." *Akridge v. Gallaudet University*, 729 F. Supp. 2d 172, 178 (D.D.C. 2010) (citing Fed. R. Civ. P. 6(a)(1)). The date of filing is established by the official docket. *Smith*, 971 F. Supp. at 3.

The envelope in which the EEOC's right-to-sue notice was mailed is stamped as "mailed from zip code 39269" on June 4, 2014. *See* EEOC Dismissal, ECF No. 51-3; Envelope, 48-7. "[A] private postage meter stamp may provide some evidence of the date of mailing." *White v. Dietrich Industries*, 554 F. Supp. 2d 684, 691-92 (E.D. Tex. 2006). Therefore, applying the "more generous" five-day presumption, the Court presumes Ms. Cooper received notice on June 9, 2014 unless Ms. Cooper is able to put forward rebuttal evidence. *Mack*, 923 F. Supp. 2d at 299. The District's copy of the notice is stamped as having been received on June 9, 2014 at 9:33 a.m. EEOC Dismissal and DCPS Aff., ECF No. 48-6. This Court determined that Ms. Cooper was entitled to discovery as to the date she received the EEOC notice, affording her the opportunity to rebut the three to five day presumption. *Cooper*, 174 F. Supp. 3d at 205. She has not done so.

Ms. Cooper fails to present any record evidence to support her rebuttal. She speculates that the stamp date is inconclusive as it only "indicates that the [right-to-sue] was still at the EEOC on that date. Therefore, we really don't know when the [right-to-sue] was actually mailed." Pl. Opp'n, ECF No. 51 at 8. Ms. Cooper also suggests that she received notice on two different dates. First, she says "the May 30, 2014 letter was stamped on June 4, 2014. I believe that I received it about seven days after that." Pl. Interrog., ECF No. 48-8 at 10.

Later, she asserts that she received the right-to-sue notice "on or about June 10, 2017."[6] Pl. Stmt., ECF No. 51-2 at ¶ 2. In support, Ms. Cooper cites to the missing affidavit.

Because Ms. Cooper has the burden to rebut the five day receipt presumption and because she has offered no evidence beyond her own speculations and conclusory allegations, the Court will presume that she received the right-to-sue notice on June 9, 2014. Therefore, she was required to file her claim by September 8, 2014. However, the electronic docket shows that the complaint was uploaded at 12:14 am on September 9, 2014. *See* Notice of Electronic Filing, Civ. No 14-cv-1526, ECF No. 1. In fact, Ms. Cooper all but concedes that she missed the deadline. She repeatedly states that she "filed her initial Complaint on September 9, 2014." *See* Pl. Opp'n, ECF No. 51 at 2, 3, 7, 8, 9.

Although the Court could exercise its discretion and toll the filing period, Ms. Cooper has given the Court no basis upon which to do so. In *Smith*, the Court exercised equitable tolling because the plaintiff demonstrated "good faith and due diligence" by hiring a messenger, who did not timely file the claim because he misunderstood the Clerk Office's instructions. 806 F. 3d at 63-64; *see also Koch v. Donaldson,* 260 F. Supp. 2d 86, 90-91 (D.D.C. 2003)(determining that plaintiff, who filed

---

[6] The Court assumes Ms. Cooper intended to write June 10, 2014, not 2017.

one day late, demonstrated sufficient diligence by making numerous attempts to file within the filing period, all of which failed due to "technical problems beyond his control"). Not here. As discussed above, Ms. Cooper does not offer any reason for her tardiness and thus, the Court sees no reason to exercise its "extraordinary" discretion. *Turner*, 572 F. Supp. 2d at 73-74 (declining to exercise equitable tolling because the Plaintiff did not "offer any reason" for her delay).

Therefore, Ms. Cooper's retaliation claim under Title VII, the ADEA, and the ADA is time-barred because she filed her claim late. Although Ms. Cooper has given the Court no basis upon which to apply the doctrine of equitable tolling, because she missed the statutory deadline by minutes, the Court will analyze whether Ms. Cooper established a prima facie case of retaliation, as if she timely filed her complaint. Ms. Cooper has failed to do so.

    ii.   *Ms. Cooper Cannot Establish a Prima Facie Retaliation Claim Pursuant to Title VII, the ADEA, and the ADA*

Ms. Cooper alleges that the District delayed in processing her retirement benefits for two years in retaliation for her complaints regarding discrimination and for seeking reasonable disability accommodations. Pl. Am. Compl., ECF No. 25 at ¶ 28. When, as here, a plaintiff lacks evidence of direct discrimination, a retaliation claim under all three statutes—

Title VII, the ADEA, and the ADA—is "subject to the familiar burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *See Toomer*, 2017 WL 3084376 at *7 (using the same framework for resolving Title VII and ADEA retaliation claims); *see also Johnson v. District of Columbia*, 207 F. Supp. 3d 3, 11 (D.D.C. 2016) (using the same framework for addressing an ADA retaliation claim). "Under that framework, a plaintiff must first establish a prima facie case of retaliation by showing (1) that [she] engaged in statutorily protected activity; (2) that [she] suffered a materially adverse action by [her] employer; and (3) that a causal link connects the two." *Jones v. Bernanke*, 557 F.3d 670, 677 (D.C. Cir. 2009). To establish causation, Ms. Cooper must demonstrate that "the employer had knowledge of the employee's protected activity, and that the [retaliatory] personnel action took place shortly after that activity." *Cones v. Shalala*, 199 F.3d 512, 521 (D.C. Cir. 2000)(quoting *Mitchell v. Baldrige*, 759 F.2d 80, 86 (D.C. Cir. 1985)). In other words, "retaliation claims must be proved according to traditional principles of but-for causation . . . . [meaning] that the adverse action would not have occurred absent the retaliatory motive." *Farzam v. Shell*, No. 12-35, 2015 WL 8664184, at *4 (D.D.C. Dec. 11, 2015).

If a plaintiff establishes a prima facie case, the burden shifts to the employer to articulate a legitimate, non-

retaliatory reason for its actions. *Jones*, 557 F.3d at 677. "If the employer does so, the burden-shifting framework disappears, and a court reviewing summary judgment looks to whether a reasonable jury could infer . . . retaliation from all the evidence . . . ." *Id.* (internal quotation marks and citations omitted). Thus, the crucial issue "reduces to whether the plaintiff has produced sufficient evidence for a reasonable jury to find that the employer's asserted non-retaliatory reason was not the actual reason for its adverse action and that the employer intentionally retaliated against the plaintiff." *Toomer*, 2017 WL 3084376 at *7.

Assuming Ms. Cooper was engaged in statutorily protected activity when she sought a "reasonable accommodation for her disability" and "reported every action she believed to be discriminatory" to school management, Pl. Opp'n, ECF No. 51 at 10-11, Ms. Cooper's claim fails because she has not shown that there is a disputed issue of material fact as to whether she suffered an adverse employment action.

A Court "first must determine whether [a] plaintiff has suffered an adverse employment action." *Adesalu v. Copps*, 606 F. Supp. 2d 97, 103 (D.D.C. 2009); see also *Taylor v. Solis*, 571 F.3d 1313, 1320 n.* (D.C. Cir. 2009) ("The court can resolve [the question of retaliation] in favor of the employer based . . . upon the employee's failure to prove an element of her case—

14

here that her employer took a materially adverse action against her."). "Adverse actions in the retaliation context encompass a broader sweep of actions than those in a pure discrimination claim." *Baloch v. Kempthorne*, 550 F.3d 1191, 1198 n. 4 (D.C. Cir. 2008)(internal quotations and citations omitted). However, even under this "broad[ ]" meaning of "adverse action," Ms. Cooper must still demonstrate that "'a reasonable employee would have found the challenged action materially adverse.'" *Id.* (quoting *Burlington North & Santa Fe Railway Co. v. White*, 548 U.S. 53, 68 (2006)). Put differently, the adverse action must be capable of "dissuad[ing] a reasonable worker from making or supporting a charge of discrimination." *Burlington*, 548 U.S. at 68 (internal quotations and citations omitted).

Delaying retirement benefits for two years could be an adverse action if it involved "financial harms," *Baloch*, 550 F.3d at 1199, or "a significant change in benefits." *Burlington*, 548 U.S. at 64 (internal citations omitted). To that end, Ms. Cooper alleged—without providing any corroborating evidence—that the intentional delay in processing her retirement benefits caused financial harm. Pl. Stmt., ECF No. 51-2 ¶ 23 (She "could not pay her bills and had her home placed in foreclosure").

However, Ms. Cooper has not provided any evidence supporting her contention that the District did actually delay processing her retirement benefits for two years. Rather, the

undisputed facts show that Ms. Cooper did not submit her complete application for retirement until June 26, 2014. Pl. Dep., ECF No. 48-9 at 86:2-4. Once she applied, she received her retirement benefits less than two months later in August 2014. *Id.* at 91:19-21.

Ms. Cooper makes several arguments to explain why there was a two-year delay attributable to the District in processing her retirement benefits. First, she alleges, without providing any supporting evidence, that she "formally invoked" the retirement process in April 2011, that the District "deliberately neglected and delayed" processing her paperwork. Pl. Opp'n, ECF No. 51 at 11-12. However, Ms. Cooper's own testimony confirms that she did not apply for retirement, but merely requested a retirement computation "just to see if [she] could retire." Pl. Dep., ECF No. 48-9 at 84:5-10. She was asked by the retirement office employee to return during the 2011-2012 school year for a computation. *Id.* According to Ms. Cooper, when she returned to the retirement office in November 2011, the District did in fact provide her with a computation, advising her that she was eligible to retire in November 2012. *Id.* at 84:11-18. More to the point, it is clear that Ms. Cooper did not actually attempt to retire in 2011. As the District's forms make certain, a "Request for Retirement Computation Only" form is not an application for retirement, but merely a form to determine

16

retirement eligibility and future benefits. Computation Form, ECF No. 51-4. It clearly informs employees that submitting the form "is not considered . . . intent to retire." *Id.*

Next, Ms. Cooper argues that the District delayed processing her retirement paperwork in 2012. Pl. Opp'n and Exs., ECF No. 51 at 11; Pl. Interrog., ECF No. 48-8 at 10 ("I applied for retirements [sic] on about July 2012."). Again, Ms. Cooper cites no support for this claim, nor is there evidence in the record establishing that Ms. Cooper applied for retirement at this time. *See generally* Pl. Opp'n, ECF No. 51. Instead, Ms. Cooper testified that she returned to the retirement office on July 31, 2012, stating that she was "ready to fill out [her] paperwork for retirement." Pl. Dep., ECF No. 48-9 at 84:19-85:7. The retirement official, Ms. Green, told Ms. Cooper that she "couldn't speak with [her] right then because she had all these other retirement applications to do" and told Ms. Cooper that she needed to fill out a new "Request for Computation" form in case there had been any changes over the past year. *Id.* at 85:3-19. No reasonable jury could interpret this encounter to mean that the District was delaying processing Ms. Cooper's retirement paperwork in retaliation. Indeed, Ms. Cooper followed these instructions and submitted the computation form in July or August 2012. Computation Form, ECF. Nos. 48-10, 51-4. Moreover, Ms. Cooper's own testimony also contradicts her unsupported,

conclusory argument that she had applied in 2012. For example, in her deposition, Ms. Cooper acknowledges that she understood that submitting a computation form was not the same as applying for retirement. *See* Pl. Dep., ECF No. 48-9 at 85:3-5. And she stated that she was told by a DCPS attorney involved in her OEA appeal that she could not apply for retirement because she had been terminated. Pl. Dep., ECF No. 48-9 at 88:9-15. While the date that the OEA case was resolved is not clear from the record provided, Ms. Cooper testified that she applied on June 26, 2014 once the "final decision that came from the [OEA] judge . . . was that I be allowed to retire with full benefits." *Id.* at 86:11-16.

Therefore, in light of her conflicting testimony and lack of evidence to the contrary, no reasonable jury could find that Ms. Cooper filed a retirement application in 2012: specifically, Ms. Cooper believed that she was ineligible to do so and there is no evidence in the record that she submitted an application before 2014. Thus, the District could not retaliate by delaying an application it never received. The only retirement application in the record is Ms. Cooper's June 26, 2014 application. Retirement Application, ECF No. 51-4; Pl. Opp'n, ECF No. 51 at 12 ("[S]he eventually filed a completed application form on June 26, 2014"). It is undisputed that Ms. Cooper received her retirement benefits shortly thereafter in

August 2014. Pl. Dep., ECF No. 48-9 at 91:19-21. Because a

"court must enter summary judgment against a nonmovant 'who

fails to make a showing sufficient to establish the existence of

an element essential to that party's case," *Frito-Lay, Inc. v.

Willoughby*, 863 F.2d 1029, 1032 (D.C. Cir. 1988)(quoting

*Celotex*, 447 U.S. at 322), the District's motion for summary

judgment on this claim[7] is **GRANTED**.

### B. Ms. Cooper Failed to Establish an FMLA Violation, Much Less a Willful One

It is undisputed that Ms. Cooper received a performance

evaluation score of "minimally effective" for school years 2010-

2011 and 2011-2012 and that she was terminated for that reason.

Def. Stmt., ECF No. 48 at ¶¶ 3-5. However, Ms. Cooper contends

that her termination and the events leading up to it, including

a "ten-point deduction from her job performance," were done in

---

[7] Ms. Cooper has also not established that her protected activity caused the adverse action, or that the District intentionally delayed processing her paperwork as a result of her complaints. She merely concludes that there is a "material fact question as to the existence of a causal link" between her protected activity and any delay, as demonstrated by the "temporal proximity" of her complaints and the "breakdown" in the retirement process. Pl. Opp'n, ECF No. 51 at 12, 14. For the Court to accept "mere temporal proximity . . . as sufficient evidence of causality . . . the temporal proximity must be very close." *Clark County School District v. Breeden,* 532 U.S. 268, 273-74 (2001)(internal citations and quotations omitted). But Ms. Cooper does not identify the dates of her protected activity nor does she include the date of the alleged "breakdown." In searching the record, Ms. Cooper did allege that she requested a disability accommodation in September 2011, Pl. Interrog., ECF No. 51-8 at 6, but her retirement computation was processed as requested two months later. Pl. Dep., ECF No. 48-9 at 84: 11-18. Moreover, Ms. Cooper presents no evidence to suggest that the employees who processed her retirement knew about her protected activity. *Compare with Alexander v. Tomlinson*, 507 F. Supp. 2d 2, 17-18 (D.D.C. 2007) (finding sufficient evidence of causation because the principal actors had direct knowledge of the employee's protected activity and the adverse action took place shortly thereafter).

retaliation for exercising her FMLA rights. Pl. Opp'n, ECF No. 51 at 2. The FMLA prohibits employers from interfering with or denying an employee's right to take leave under the Act, and further prohibits an employer from discharging or discriminating against an employee who returns from leave. 29 U.S.C. § 2615(a); *Dahlman v. American Association of Retired Persons*, 791 F. Supp. 2d 68, 79 (D.D.C. 2011). An action under the FMLA must be brought within two years of the alleged violation, or within three years if the violation is alleged to have been willful. 29 U.S.C. § 2617(c); *see Hodge v. United Airlines*, 666 F. Supp. 2d 14, 23 (D.D.C. 2009)(citing *Sampson v. Citibank, F.S.B.*, 53 F. Supp. 2d 13, 19 (D.D.C. 1999)) ("The three-year statute of limitations for willful violations does not apply unless the complaint contains some express or implied allegation of willful conduct.").

To prove retaliation under FMLA, Ms. Cooper must "show that she engaged in a protected activity under this statute; that she was adversely affected by an employment decision; and that the protected activity and the adverse employment action were causally connected." *Gleklen v. Democratic Congressional Campaign Committee*, 199 F. 3d 1365, 1368 (D.C. Cir 2000); *see also Alford v. Providence Hospital*, 945 F. Supp. 2d 98, 108 (D.D.C. 2013) ("The *McDonnell Douglas* framework applies to retaliation claims" under the "FMLA/DCFMLA"). However, if the

District demonstrates a "legitimate, non-discriminatory justification" for its actions, "the *prima facie* case drops out of the equation, and 'the one central inquiry that remains is whether a reasonable jury could infer retaliation or discrimination from all the evidence.'" *Thomas v. District of Columbia*, 197 F. Supp. 3d 100, 112 (D.D.C. 2016)(quoting *Nurriddin v. Bolden*, 818 F.3d 751, 758 (D.C. Cir. 2016)). Ms. Cooper has the burden of demonstrating that the District's asserted reason for her poor reviews and termination were not "true" reasons and that the District "intentionally retaliated" against her for exercising her FMLA rights. *Miles v. Howard University*, 653 Fed. Appx. 3, *7 (D.C. Cir. June 14, 2016).

Ms. Cooper filed her complaint on September 9, 2014, more than two years after she was she was terminated on August 20, 2012. Thus, to avoid being time-barred, she must also demonstrate that the District's alleged FMLA violations were willful. To prove a willful violation, Ms. Cooper must demonstrate that the District "knows its conduct [is] wrong or has shown reckless disregard for the matter in light of the statute." *Hodge*, 666 F. Supp. 2d at 23 (quoting *Sampson*, 53 F. Supp. 2d at 19); see also *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988)("The word 'willful' is widely used in the law, and . . . it is generally understood to refer to conduct that is not merely negligent.").

Ms. Cooper exercised her rights under FMLA twice: once from April 4, 2011 to June 10, 2011, Pl. Dep., ECF No. 48-9 at 13:16-22, and a second time from December 1, 2011 to January 10, 2012, *Id.* at 51:1-5, 59:14-22. Def. Mot., ECF No. 48 at 12-13 (citing Pl. Dep., ECF No. 48-9). However, because Ms. Cooper filed her claim in September 2014, alleged retaliatory actions before September 2011 are time-barred, and thus she can only claim that she endured retaliation for taking FMLA leave the second time. 29 U.S.C. § 2617(c). Ms. Cooper alleges that the retaliatory, adverse actions taken as a result of her requesting and taking FMLA leave include a November 2011 ten-point performance rating deduction taken soon after she requested the December 2011 FMLA leave, harassment related to her medical leave, "altered terms of [her] employment," and termination. *See* Pl. Opp'n, ECF No. 51 at 2-7.

The District argues that it has met its burden to present a legitimate reason for taking adverse action when it explained that Ms. Cooper's termination and negative ratings were performance-based. Its argument is supported by an affidavit from the supervisor who gave Ms. Cooper her evaluations, Walker Aff., ECF No 48-12; Ms. Cooper's performance ratings themselves, ECF Nos. 48-2, 48-3; and the termination notice citing the performance ratings, ECF No. 48-1. The evidence establishes that Ms. Cooper was rated "slightly below standard" for several

22

performance-related reasons including: failing to follow procedures for submitting discipline referrals, failing to follow procedures for appropriate work attire, failing to follow protocols for the morning block, failing to participate in a work project, and failing to arrive on time. Walker Aff., ECF No. 48-12. Ultimately, Ms. Cooper was terminated for her low performance ratings. In its July 2012 termination notice, the District explains that Ms. Cooper was terminated because "IMPACT procedure provides that employees who receive a rating of Minimally Effective for two consecutive years are subject to separation." Termination Notice, ECF No. 48-1. These performance assessments confirm the District's reasoning. *See* Assessments, ECF Nos. 48-2, 48-3. In both, Ms. Cooper's reduced scores correspond to performance-related deficiencies observed in the classroom and contain detailed explanations of each individual problem. *See, e.g.*, Assessment, ECF No. 48-3 at 5 ("Mrs. Cooper was minimally effective at explaining content clearly. Explanations of the content could have been strengthened through the use of operational definitions and text rich bulletin board material that outlined key concepts from the unit of study.")

The Court agrees that the District has met its burden. It is "well established" that an employee's poor job performance is a "nondiscriminatory justification for an adverse employment action." *Edwards v. Environmental Protection Agency*, 456 F.

Supp. 2d 72, 90 (D.D.C. 2006); *see also Miles*, 653 Fed. Appx. at
*7 (finding it legitimate that the employer terminated the
employee for performance-related reasons), *Thomas v. District of
Columbia*, 227 F. Supp. 3d 88, 101-02 (D.D.C. 2016) (finding
deficient work performance and not "get[ting] along with her
ultimate supervisor" a legitimate reason for adverse action).

Having established a legitimate, nondiscriminatory purpose,
the "ultimate burden" now switches to Ms. Cooper to show that
the District's stated reasons were pretextual, masking its
retaliatory motive. *St. Mary's Honor Center v. Hicks*, 509 U.S.
502, 508 (1993)(analyzing a Title VII case under the *McDonnell
Douglas* scheme).[8] This requires showing both that the District's
reason was false and that protected activity was the real
reason. *Id.* Otherwise, courts "may not second-guess an
employer's personnel decisions absent demonstratively
discriminatory motive." *Fishbach v. District of Columbia
Department of Corrections*, 86 F.3d 1180, 1183 (D.C. Cir.
1996)(internal quotations and citations omitted).

Ms. Cooper has not met her burden. She does not cite any
support in the record to corroborate that the school's reasons
in terminating her were pretextual. *See generally* Pl. Opp'n and

---

[8] The D.C. Circuit has held that the "analytical framework for [a] claim of
retaliation" under FMLA is the same as a claim of discrimination under Title
VII. *McFadden v. Ballard Spahr Andrews & Ingersoll, LLP*, 611 F.3d 1, 6 (D.C.
Cir. 2010).

Exs., ECF No. 51. After a review of the record, the Court comes up lacking. In fact, to the extent that Ms. Cooper does argue that the decisions were pretextual, she seems to allege that the pretext is based not on taking FMLA leave, but on "racial and age-based animus," which is irrelevant to her FMLA claim. Pl. Opp'n, ECF No. 51 at 3; *see also id.* at 4 ("Plaintiff returned from FMLA leave and was harassed by her superiors, demoted with a ten point deduction . . . and terminated. These actions were taken . . . in retaliation for the protected activity of reporting harassment and discrimination to her employer and requesting accommodation for her disability.") In her Statement of Disputed Facts, Ms. Cooper again asserts that her "lowered teacher rating was in retaliation for her accommodation request and reports of harassment." Pl. Stmt., ECF No. 51-2 at ¶ 14. Again, Ms. Cooper contradicts herself when she testified that the allegedly adverse ten-point deduction in her performance rating resulted from questioning another teacher's authority, a reason completely unrelated to her FMLA leave. Pl. Dep., ECF No. 48-9 at 66:22-67:4.

Ms. Cooper goes on to argue that "further discovery" will reinforce "existing record proof that the sole reason provided by the District for Cooper's discharge was a pretext . . . in retaliation for her participation in activities protected by the statute." Pl. Opp'n, ECF No. 51 at 5. Not only does Ms. Cooper

not cite to any of the claimed "existing record proof" to support her argument, but this summary judgment motion comes after a full opportunity for discovery on the claims that survived the District's Motion to Dismiss. Finally, Ms. Cooper asserts that the District's reasons are pretextual because the District has given "different justifications at different times" which have been "arguably inconsistent." *Id.* at 6. But Ms. Cooper does not describe what those inconsistent reasons are, nor does she cite to the record to support these assertions.

Additionally, Ms. Cooper provided no evidence that she faced harassment as a result of her taking FMLA leave. While Ms. Cooper describes a number of incidents demonstrating a contentious relationship with the school's administration, she does not demonstrate that any of these interactions were in retaliation for taking FMLA leave. *See* Pl. Dep., ECF No. 48-9 at 53-84; *see also* Pl. Interrog., ECF No. 48-8 at 2-9. When asked what she thought caused the alleged harassment, Ms. Cooper responded: "I don't know. I don't have the slightest . . . . I wish I could tell you what it was . . . . I wish somebody would tell me what the problem was." Pl. Dep., ECF No. 48-9 at 65-67. The most colorable incident of potential FMLA-related harassment is the allegation that the DCPS Principal told her "on or about" September 16, 2011 that he "heard [she] always uses leave." Pl. Dep., ECF No. 48-9 at 68:2-22; Pl. Interrog., ECF No. 48-8 at 7.

Ms. Cooper does not allege that any further harassment happened as a result of that conversation. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 787–88 (1998) (finding that "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to [discrimination]") (quoting *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 82 (1998)). Indeed, "the D.C. Circuit has repeatedly emphasized that 'casual or isolated manifestations of a discriminatory environment . . . may not raise a cause of action.'" *Goode v. Billington*, 932 F. Supp. 2d 75, 89 (D.D.C. 2013) (quoting *Park v. Howard University*, 71 F.3d 904, 906 (D.C. Cir. 1995)).

Because Ms. Cooper is unable to demonstrate that the District retaliated against her in violation of the FMLA, it is not necessary to determine whether any alleged violation is willful as it must be to avoid the two-year time bar. The District's motion for summary judgment on this claim is **GRANTED**.

## V. Conclusion

For the reasons stated above, the District of Columbia's motion for summary judgment is **GRANTED**. An appropriate Order accompanies this Memorandum Opinion.

**SO ORDERED.**

**Signed:** **Emmet G. Sullivan**
**United States District Judge**
**September 29, 2017**